176 So. 370

**GRIFFITH FREIGHT LINES v. BENSON.**

**6 Div. 126.**

Supreme Court of Alabama.

Oct. 14, 1937.

London & Yancey and Fred G. Koenig, Sr., all of Birmingham, for appellant.

J. J. Curtis and Herman Maddox, both of Jasper, for appellee.

BROWN, Justice.

This is an action on the case by a truck owner to recover damages for personal injury and property loss resulting from the wrecking of his truck, the plaintiff driving, by running against or into a ditch and embankment at Lynn's Park on the Bankhead Highway, where the highway intersects and crosses the "Cordova and Sipsey Road," also a public highway. The plaintiff at the time was in the act of passing the defendant's truck driven by defendant's agent or servant, G. P. Dial.

The basis of the plaintiff's right of action, stated in different counts of his complaint, is that defendant's agent or servant, while acting within the scope of his employment, negligently or wantonly, one or both, crowded plaintiff's truck off the highway.

The pleas were not guilty, and contributory negligence, pleaded in short by consent, with leave to offer evidence of contributory negligence in support of such pleas as if specially pleaded.

Both trucks were proceeding west; the truck of defendant leading and carrying a trailer loaded with baled cotton destined to the warehouse of Anderson-Clayton Company, located on the bank of the Warrior river, and by the side of the Sipsey-Cordova highway, some three or four hundred yards south of the intersection at Lynn's Park. The time was about 11 o'clock, a. m., December 20, 1935, and the weather was cold and clear. The defendant's truck, including the trailer, was 32 feet in length, and with the load weighed upward of seven and one-half tons. The view of the driver of the cotton truck, to the rear, was somewhat obscured by the load, but he testified that the truck was equipped with a mirror attached on the side of the cab enabling him to see from his seat in the cab just around the corner of the load of cotton. The highway was slightly up grade, and the cotton truck, according to varying phases of the testimony, was moving at the rate of from 5 to 15 miles per hour. The driver testified that he went into low gear immediately before reaching the intersection preparatory to making the turn.

The plaintiff's truck was running light, without load, and came in behind the defendant's truck some distance from the river bridge, according to plaintiff's testimony, a quarter of a mile, and followed close behind, until shortly before defendant's truck reached the intersection; that he then sounded his horn to indicate his desire to pass, cut to the left side of the highway and speeded up; that defendant's driver turned the cotton truck to the left at the intersection in front of plaintiff's truck, and plaintiff, in his effort to avoid a collision, cut further to the left, and ran his truck across the intersection into the embankment and ditch at the southwest corner of the intersection. The trucks did not come in collision with each other. The testimony offered by plaintiff tended to show that the head of defendant's truck passed in front of his truck, and to avoid the collision he cut further to the left and applied his brake.

The defendant's evidence was to the effect that the driver of the defendant's truck, before attempting to turn on the intersection, made observation in the mirror, and then thus detailed the facts incident to the occurrence: *"I did not hear any horn sounded by an automobile at any time before reaching the crossing our (or) at the time I reached the crossing. When I got into the intersection and started making my turn I opened the door and pushed it back and put my hand out and turned my head. I pulled the wheel around and a truck rushed by me and run into the bank, and I stopped and got out and walked over there to see if anyboody was hurt. I went back and got my truck and pulled off the road. I stopped my truck about a foot over the center of the road before getting out. No both front wheels were not over the center of the road, just one, the left front wheel. I observed the speed of the truck as it passed me and it was running pretty fast, about 40 to 45 I guess."* (Italics supplied.)

The evidence is without dispute that both drivers were familiar with the said highways and the intersection at the point of the occurrence.

Viewed in its lights most favorable to his case, the evidence offered by the plaintiff goes to show no more than that the driver of the cotton truck was guilty of initial simple negligence in turning to the left at the intersection of the highway without signaling his intention to do so, and such evidence shows without dispute that the plaintiff was guilty of proximate contributory negligence in passing the defendant's truck on the intersection of the highway in violation of the statutory "rules of the road," that: "(c) The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direc-

tion at any steam or electric railway grade crossing *nor at any intersection of highways* unless permitted so to do by a traffic or police officer. Any person violating any of the provisions of this section shall be guilty of a misdemeanor and upon conviction shall be punished as provided in section 75 [1397 (77)] of this article." Gen. Acts, 1927, p. 371, § 59. [Michie's Code 1928, § 1397, subd. 61]. (Italics supplied.)

The contention of the appellee, that he had a right to assume that the defendant's truck would proceed ahead on the Bankhead Highway, and if it had done so his truck would have been west of the intersection when it passed, is untenable. The statute was a warning to him that he could not indulge such assumption. On the other hand, the driver of the cotton truck, after he reached the intersection, had the right to assume that no one would attempt to pass at that point. L. Hammel Dry Goods Co. v. Hinton, 216 Ala. 127, 112 So. 638.

Appellee, however, insists that notwithstanding the plaintiff was guilty of contributory negligence, which proximately contributed to his hurt and damages, barring a recovery for initial simple negligence, the evidence warranted an inference, which it was the province of the jury to draw, that the driver of defendant's truck was guilty of subsequent negligence and wantonness, one or both. This contention is rested upon the testimony of the defendant's driver, above quoted and italicized. To our mind, this evidence clearly shows that said driver was wholly unaware of the proximity of plaintiff and his truck until plaintiff's truck passed immediately in front of the nose of defendant's vehicle, and then such peril as had been injected into the situation by the wrongful act of the defendant had passed, and all that defendant's servant did, after becoming aware of the presence of plaintiff and his truck, was to stop defendant's truck just before it crossed middle line of the highway.

To justify application of the doctrine of "the last clear chance," subsequent negligence, there must be knowledge of peril and a negligent failure to use preventive measures to avert injury and damage, and wantonness cannot exist "without a knowledge of conditions which make the act causing it likely to result in injury and a consciousness of the danger. It does not result from mere negligence in the failure to have that knowledge and consciousness."

Buffalo Rock Co. v. Davis, 228 Ala. 603, 154 So. 556, 558.

Applying these well-settled principles of law to the case as presented by the record, our judgment is that the circuit court erred in refusing to the defendant the general affirmative charge requested in writing by it, and for this error the judgment must be reversed.

In view of the foregoing, we deem it unnecessary to treat the other questions argued.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.