McCorkle *v.* United Gas Pipe Line Company, et al.

No. 43408 May 24, 1965 175 So. 2d 480

*Crawley & Ford,* Kosciusko, for appellant.

*Brunini, Everett, Grantham & Quin, George P. Hewes, III, Newt P. Harrison,* Jackson; *George J. Thornton,* Kosciusko, for appellees.

BRADY, TOM P., J.

This is an appeal from a final decree of the Chancery Court of Attala County, Mississippi, dismissing a bill of complaint and a bill for attachment filed by the appellant against the appellees, United Gas Pipe Line Company and Daulton P. May. The record reveals the following pertinent facts:

On November 30, 1962, around 2:40 P. M., appellant was riding in a Chevrolet pickup truck driven by her husband in a southerly direction over U. S. Highway 51 a short distance south of the town of Vaiden, in Carroll County, Mississippi. Mississippi State Highway 35 intersects U. S. Highway 51 at approximately a sixty-nine degree angle, Highway 35 traverses in a southeasterly and northwesterly direction, and U. S. Highway 51 extends generally in a northerly and south-

erly direction. Daulton P. May, employee, agent and servant of United Gas Pipe Line Company, a nonresident corporation incorporated in the state of Delaware, was operating a 1962 Chevrolet automobile likewise in a southerly direction over U. S. Highway 51 and was following the Chevrolet pickup truck driven by appellant's husband, C. M. McCorkle. The car driven by May collided with the McCorkle truck when May attempted to pass the truck, which also turned into the left lane in an effort to turn onto Highway 35.

A thorough finding of facts and conclusions of law were filed by the learned chancellor in accordance with Mississippi Code Annotated section 1390 (1956). Oddly enough, it is only the appellees who, in their briefs, take any issue with the chancellor's findings of fact. The chancellor found that as one travels south over U. S. Highway 51, at or near the crest of an incline, there is a sign on the east side which reads: "Vaiden Corporate Limits — Speed Limit 45 Miles Per Hour." On the west side of U. S. Highway 51, there is a second sign indicating that there is an intersection crossing Highway 51 south of this point, which is 767 feet away. The chancellor further found that, continuing south on said highway, there is another sign located on the west side thereof which reads: "JCT — Miss. No. 35." This sign is located 358 feet north of the center of the intersection of Highways 51 and 35. The chancellor found that on the east side of Highway 51, approximately 233 feet north of the intersection of said highways, there is a sign as follows: "U. S. No. 51 North," and a traffic directional sign on the east side of Highway 51 which is 62 feet from the center of the intersection of the two highways.

The chancellor found that the McCorkles, as they came up the incline and across the town boundary and began their decent toward the intersection some 700 feet or more away, were being followed by Daulton P. May

some two car lengths behind, at a speed of approximately thirty miles per hour. The chancellor held that May is an employee of United Gas Pipe Line Company as pipeline foreman; that Mr. McCorkle turned on the left turn signal light before starting to turn into the left lane in an attempt to make a left turn from Highway 51 onto Highway 35, in a manner in violation of the statutory requirements, in that he did not continue into the the intersection proper and pass the intersection of the median lines thereof and make his left turn after crossing the center line of Highway 35. An excellent and meticulous analysis of the testimony of all the witnesses was made by the chancellor, and we conclude that the chancellor was eminently correct in his determination of the facts as reflected in his opinion.

After analyzing the various distances testified to by the numerous witnesses for the appellant and the appellees with reference to where the collision occurred, how far into the intersection or whether outside of the intersection, and the distance and location of the skidmarks of appellee May's car, the chancellor concluded from the testimony that after the collision the vehicles came to a stop less than one hundred feet north of the intersection, and that May was more than one hundred feet north of the intersection in the east or north passing lane when he commenced his initial effort to pass McCorkle. The chancellor held that:

> Mr. May was not as familiar with the road and the intersection of Highway #51 and Highway #35 as Mr. McCorkle because he was not accustomed to traveling these highways as Mr. McCorkle was; however, in traveling south out of Vaiden, there were ample signs to warn travelers that these two highways were intersecting and May knew they were there.

As a matter of fact, May testified that he saw the intersection sign. The chancellor further held:

Under the circumstances involved in this case, there was more than a remote possibility that injuries could occur to the complainant, Mrs. McCorkle, or to the defendant, May; and that he, May, should have reasonably anticipated that some injury to another could probably result from his attempt to pass under the circumstances. This, as a reasonable anticipation, should have existed and his actions should have been governed accordingly. The fact that he could have passed before reaching the intersection does not relieve him, under the attendant circumstances, of exercising the caution that ordinarily a prudent man should have exercised to avoid an injury which could probably result from the attempt to pass. The uncontradicted testimony showed that the skidmarks upon the concrete made by the tires of Mr. May to avoid striking Mr. McCorkle's truck was (sic) approximately 87 feet in length. This would indicate that the speed of Mr. May's automobile was traveling in excess of the speed that he should have been traveling under the circumstances and being as near the intersection as his automobile was being driven. The maximum speed was 45 miles per hour, and Mr. Baysinger testified that in his opinion he was not exceeding the speed limit; however, that does not mean that under the circumstances, he could have maintained the maximum speed without danger of injury to others. From the testimony, there appears the possibility of May passing the McCorkle truck before he reached the intersection of the two highways, which is defined by the Statute as intersecting highways at a right angle or approximately a right angle; however, prudence, good judgment and the proper care in operating motor vehicles over our highways that are becoming more and more traveled does not demand a lessening of caution where there is a foreseeable possibility of injury to another in order to stay within a clear

provision of the Statute. It is clear from the testimony of Baysinger, Michie, Jones, Mr. McCorkle, Mrs. McCorkle, the complainant, and Hamrick, that May's attempt to pass the McCorkle truck was within 100 feet of the intersection area.

The court further held as follows:

The Court is of the opinion that May was negligent in his attempt to pass the McCorkle truck at the point where he did attempt to pass under the circumstances.

The court however also stated:

The Court is therefore of the opinion that May could have passed the McCorkle vehicle had McCorkle continued to travel down the South lane of the Highway and had not commenced his left turn until he had reached the intersection as defined by the Statute.

. . . .

The testimony of McCorkle is very clear that before he commenced to make his left turn onto Highway #35, he observed through his rear view mirror that May was driving on his left side of the highway at a high speed and obviously knew or should have known that it was May's intention to pass, and he was in no position to think, under the circumstances, that May would pull back into the right lane of travel. Instead of remaining in the right lane of travel, McCorkle assumed a risk that an ordinary careful and prudent man would not have assumed under the circumstances when he commenced his left turn onto Highway #35 and at a point North of the intersecting area of the two highways.

The court stated:

We have before us a case of negligence on the part of both McCorkle and May. Therefore, the "proximate cause" of the injury to Mrs. Luna Dell McCorkle, who alleged to have and did sustain certain injuries in the collision between the car driven by May and the car driven by the husband of the injured,

Mr. McCorkle, is before the Court and that question is whether or not the proximate cause was the negligence of May or McCorkle.

The court then concluded:

While the defendant May was negligent in driving at an excessive speed within one hundred feet of the intersection on the north lane of the highway in an attempt to pass the truck under the circumstances appears to be clear; however, the negligence of May would not necessarily constitute the proximate cause of the collision and injury to Mrs. McCorkle, the complainant, if the natural and continuous sequence of the negligent acts of May were broken by an efficient intervening cause which produced her injury without which the results would not have occurred. Before McCorkle turned from the right side of the highway to the left to enter the intersection he looked through his rear mirror and saw May approaching to the left of the highway, had McCorkle remained on the right side of the highway, it appears that the natural and continuous sequence of the acts of May would have remained unbroken, and May would have passed without the collision having occurred. However, the natural and continuous sequence of acts of May did not remain unbroken; they, however, were broken by McCorkle's turn into the left or north lane of travel and this was the efficient and intervening cause of the injury to Mrs. McCorkle and thereupon the sole proximate cause became the negligence of Mr. McCorkle in his attempt to get into the intersection before May collided with him or perhaps would turn back into his right lane of travel before the collision occurred.

The court concluded by ruling:

The general principle of law where the second actor after having become aware of the existence of a potential danger created by the negligence of the first

actor, acts negligently in respect of the dangerous situation and thereby brings about an accident with injurious consequences to others, the first actor is relieved of liability because the condition created by him was a mere circumstance and not the proximate cause of the accident, is applicable in this case.

. . . therefore, the Bill of Complaint will be dismissed and the cost of the Court will be taxed against the defendant inasmuch as the equitable circumstances of this case warrants the assessment of the cost against the defendants and such will be the order of this Court.

There is only one error assigned, which is:

The decision of the Chancellor is manifestly wrong, against the overwhelming weight of the evidence, contrary to law and contrary to equity and good conscience.

While the findings of fact by the chancellor defy reasonable objection, we are forced to conclude that the chancellor was manifestly wrong in his determination of the rule of law to be applied in this case, and is contrary to law and equity. The legal principles which are involved in this case are controlled by the decisions in the following cases: Hankins v. Harvey, 248 Miss. 639, 160 So. 2d 63 (1964); Matthews v. Thompson, 231 Miss. 258, 95 So. 2d 438 (1957); Mississippi Power & Light Co. v. Bradley, 220 Miss. 304, 70 So. 2d 611 (1954); Billups Petroleum Co. v. Entrekin, 209 Miss. 302, 46 So. 2d 781 (1950); Moore v. Abdalla, 197 Miss. 125, 19 So. 2d 502 (1944); Gulf Refining Co. v. Brown, 196 Miss. 131, 16 So. 2d 765 (1944); Ross v. Louisville & N. R. R., 178 Miss. 69, 172 So. 752 (1937); Thompson v. Mississippi Cent. R. R., 175 Miss. 547, 166 So. 353 (1936); Oliver Bus Lines v. Skaggs, 174 Miss. 201, 164 So. 9 (1935); Solomon v. Continental Baking Co., 172 Miss. 388, 160 So. 732, 733 (1935); Keith v. Yazoo & M. V. R. R., 168 Miss. 519, 151 So. 916 (1933);

Russell v. Williams, 168 Miss. 181, 150 So. 528 (1933); Public Serv. Corp. v. Watts, 168 Miss. 235, 150 So. 192 (1933); D'Antoni v. Albritton, 156 Miss. 758, 126 So. 836 (1930); Cumberland Telephone & Telegraph Co. v. Woodham, 99 Miss. 318, 54 So. 890 (1910).

The pertinent sections of Mississippi Code Annotated (1956), which have application to the case at bar, provide as follows:

Section 8176. Speed restrictions.

. . . .

(b) *The driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection,* when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic, or by reason of wether or highway conditions, *and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements.* (Emphasis ours.)

Section 8185. Limitations on overtaking on the left.

. . . .

(b) *No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions:*

1. When approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed;

2. When approaching within one hundred feet of any bridge, viaduct, or tunnel or *when approaching within one hundred feet of or traversing any intersection* or railroad grade crossing.

3. Where official signs are in place directing that traffic keep to the right, or a distinctive center line is marked, which distinctive line also so directs traf-

fic as declared in the sign manual adopted by the
State Highway Commission. (Emphasis ours.)

Section 8250. Horns and warning devices.

(a) Every motor vehicle when operated upon a high-
way shall be equipped with a horn in good working
order and capable of emitting sound audible under
normal conditions from a distance of not less than
200 feet, but no horn or other warning device shall
emit an unreasonably loud or harsh sound or a whistle.
*The driver of a motor vehicle shall when reasonably*
*necessary to insure safe operation give audible warn-*
*ing with his horn* but shall not otherwise use such
horn when upon a highway. (Emphasis ours.)

 ██ It is obvious that the appellee, May, vio-
lated the provisions of Sections 8176(b) and 8185(b),
and the learned chancellor so held. While the chancellor
held that the provisions of Section 8250 have no ap-
plication, it is obvious, nevertheless, that when the ap-
pellee, May, increased his speed instead of reducing it
and then attempted to pass the McCorkle truck to the
left within the prohibited one hundred feet of the cross-
ing, his failure to sound the horn was also a negligent
act. It can be determined logically that, after Mr. Mc-
Corkle saw appellee May in his rear view mirror and
had turned on the left rear blinking light, indicating
a left turn was imminent, appellee May hurridely and
greatly increased the speed of his car so that, when Mr.
McCorkle actually began his left turn, May's car was
traveling so rapidly that he did not have time to do any-
thing except apply his brakes and endeavor to steer his
car around the McCorkle truck, and for this reason he
failed to give an audible warning of his illegal speed
and effort to pass within 100 feet of the intersection.

Appellee May testified that he increased his speed
from thirty miles per hour as he was approaching the
intersection so that, after skidding 77 feet, when he
struck the McCorkle truck he was traveling forty-five

miles per hour. This constitutes a continuous, unbroken act of negligence *per se*. We so held in Hill v. Columbus Ice Cream & Creamery Co., 230 Miss. 634, 93 So. 2d 634 (1957), and also in Wilburn v. Gordon, 209 Miss. 27, 45 So. 2d 844 (1950). We have likewise held that a motorist who violates Section 8176, *supra,* is guilty of negligence proximately causing a collision as a matter of law.

In the case of Moore v. Abdalla, *supra,* the defendant's automobile failed to stop or slow to a stop at the intersection stop sign, as required by the statute, but traveled through the intersection at a speed of approximately fifty miles per hour, and that the plaintiff's automobile entered the intersection at the unabated speed of approximately thirty miles per hour. The plaintiff recovered a verdict, but this Court, speaking through Justice Virgil Griffith, held that the plaintiff was guilty of negligence as a matter of law, and that said negligence contributed to the collision as a matter of law, stating as follows:

(I)t is admitted by plaintiff's driver, and is undisputed throughout the entire record, that plaintiff's driver going east approached and entered the intersection at the unabated speed of approximately thirty miles an hour, which, under Section 8176, Code 1942, was prima facie negligent, and nothing was shown in excuse thereof.

Both drivers were, therefore, guilty of negligence, and that of the defendant's driver was gross. If plaintiff's driver had been proceeding at a lawful rate of speed, the defendant's vehicle would have passed over the intersection ahead of plaintiff's car; and likewise if defendant's driver had not been travelling in violation of the law, plaintiff's car would have negotiated the, intersection without injury. It follows, therefore, that the negligence of each of the drivers, each in full and uninterrupted force and ac-

tive operation at the same time, combined and coincided as co-operating causes to produce the collision and the damage, — a result not so remote that either of the drivers would be permitted to say that it could not have been reasonably contemplated as something likely to happen. (197 Miss. at 129-30.)

██ █ It is obvious that the appellee not only did not decrease his speed but actually increased it above the maximum speed limit of forty-five miles per hour since, by his own admission, after applying his brakes and skidding his tires a distance of 77 feet, he struck the McCorkle truck at a speed of forty-five miles per hour. It follows that the unlawful speed of May's car at the intersection proximately contributed to the collision.

In Terry v. Smylie, 161 Miss. 31, 133 So. 662 (1931), we gave a summary which has application to the case at bar, stating:

According to the undisputed evidence, appellants were violating this statute at the time their car struck the car occupied by appellee. The evidence further showed without conflict (the testimony of appellants, as witnesses in their own behalf) that the speed of their car proximately contributed to the injury. Appellant was violating the speed statute enacted for the safety of the traveling public. This was negligence on their part, the proximate result of which was the injury to appellee. (161 Miss. at 38.)

In Billups Petroleum Company v. Entrekin, *supra,* we pointed out that the ''proximate contributing cause'' means a substantial factor in producing an injury.

In Gulf Refining Company v. Brown, *supra,* we held that the passing of a moving automobile within 100 feet, or traversing, an intersection or any railroad grade crossing in violation of Section 8185(b) 2, is negligence which proximately contributes to a collision as a matter

of law. Speaking through Chief Justice Harvey McGehee, the Court held:

> The position of the Stewart car on the bridge did not cease to be a legal and proximate cause of the accident because of the intervention of the Chevrolet car, for the reason that when the driver of the Chevrolet got to where Stewart's car was, he had to turn to his left to go around. He turned to his left because Stewart's car was stopped on the right. Then too, the Stewart car was still there when the appellee's oil truck arrived at the scene. It was the Stewart car that was struck at its left rear end by the oil truck when the latter was evidently trying to turn to the left and avoid the impending tragedy. How then can it be said that this car only provided the condition for and not a contributing proximate cause of the accident?
>
> Without regard to the position of the Chevrolet car immediately before and at the moment of the accident, the legal principle here applicable is clearly stated in the case of Cumberland Tel. & Tel. Company v. Woodham, 99 Miss. 318, 54 So. 890, 891, where it was said in quoting with approval from 29 Cyc. 492-496 that ''If a defendant is negligent, and this negligence combines with that of another, or with any other independent intervening cause, he is liable, although his negligence was not the sole negligence, or the sole proximate cause, and although his negligence, without such other independent intervening cause, would not have produced the injury.'' Of course, Stewart could not have anticipated that the particular injury complained of would have resulted from his negligent act, or that an injury would have occurred in the particular manner in which it did on that occasion, but he should have reasonably anticipated the happening of the intervening event which transpired to cause an injury in the instant case, since

he was required under the law to anticipate the approach of other vehicles from the rear at any moment. . . . .

But there remains for determination the question of whether or not the contributory negligence of the driver of the oil truck was such as to require a mitigation of the damages to a greater extent than 25% of the value thereof.

. . . And, even though he may have been entitled to pass the stopped car of Stewart, he was not entitled under the statute to pass the moving Chevrolet within 100 feet of the bridge while it was proceeding in the same direction that he was traveling. But without further reviewing the evidence in detail, which is not in conflict in essential particulars pertaining to the actual cause of the accident, and without discussing any rights that the young lady as a pedestrian on the highway may have had, we are of the opinion, after reading the transcribed testimony and examining the maps and photographs which the trial judge had before him that the gross negligence of the driver of the oil truck was doubtless more responsible for the damages sued for than the negligence of Stewart in stopping his car at the entrance to the bridge in the manner and for the purpose heretofore mentioned. And, we have therefore concluded that the damage caused by the destruction of the oil truck should be mitigated to at least 50% of the value thereof, and that the judgment of the court below should be affirmed if a remittitur is accordingly entered; that otherwise the case should be reversed for the assessment of damages only. (196 Miss. at 147, 148, 149, 150.)

■■■ ■ ■ It is apparent that we have repeatedly condemned as gross negligence, that which appellee May endeavored to do, the passing of a moving automobile within 100 feet of a bridge, viaduct or tunnel, or when

approaching within 100 feet or traversing any intersection or railroad grade crossing, and have held such negligence is a proximate contributing cause of a collision as a matter of law. The chancellor's finding of fact and interpretation of the law thereunder is in conformity with this Court's decisions in the above noted decisions. It is in the second part of the chancellor's finding wherein the error occurs. The chancellor properly found that Mr. McCorkle was guilty of contributory negligence in beginning his left turn before he had crossed over the median of Highway 35 where it intersects Highway 51, but it was error for the chancellor to hold that the negligence of Mr. McCorkle was the sole proximate cause of the accident. The chancellor held that "the natural and continuous sequence of acts of May did not remain unbroken; they, however, were broken by McCorkle's turn into the left or north lane of travel and this was the efficient and intervening cause of the injury to Mrs. McCorkle and thereupon the sole proximate cause became the negligence of Mr. McCorkle in his attempt to get into the intersection before May collided with him or perhaps would turn back into his right lane of travel before the collision occurred."

The cases are legion in which we have held that there can be more than one proximate cause of an accident. See Hankins v. Harvey, *supra,* and Hill v. Columbus Ice Cream & Creamery Company, *supra.* The basic criteria for determining proximate cause have remained much the same since our decision in Cumberland Telephone & Telegraph Company v. Woodham, *supra,* decided in 1910.

The chancellor's opinion quotes a definition of proximate cause found in Thompson v. Mississippi Central Railroad, *supra,* which case, however, is clearly distinguishable on the facts from the case at bar. In that case we stated:

The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. (175 Miss. at 554-55.)

The chancellor sagely found appellee May to have been guilty of negligence which proximately caused the injuries to the appellant. There is no basis, however, upon which the chancellor could conclude that May's negligence was broken by the negligence of Mr. McCorkle. May's negligence was a proximate cause of the injuries in natural and continuous sequence, unbroken by any efficient intervening cause to produce the injuries and without which the results would not have occurred. This is true because the turning of McCorkle at the intersection as he did was not an *efficient intervening cause,* inasmuch as the action of McCorkle might reasonably have been anticipated, as the chancellor so clearly held in his opinion, and therefore McCorkle's action will not interrupt the connection between the original cause of May's negligence and the injuries. Ross v. Louisville & N. R. R., *supra;* Russell v. Williams, *supra.*

The chancellor found that May passed two intersection signs before attempting to pass within 100 feet of the intersection. In the case at bar McCorkle, who was preceding May into the intersection, had the right-of-way in making a left turn at the intersection. May was under a duty not to pass within 100 feet of the intersection, as the chancellor properly held. Moreover, May ignored McCorkle's signals for a left turn, and also the statute which made it mandatory that he reduce the speed of his car upon approaching the intersection, but, to the contrary, he increased his speed in violation of the forty-five miles per hour speed limit. May was guilty of these acts of gross negligence, and the chancellor was eminently correct in holding that May should have foreseen that some injury would result, as a con-

sequence of his negligence, to the McCorkles or to himself.

It is a well established rule of law, long recognized by this Court, that the original negligence of one party will not be insulated if the occurrence of the intervening cause might reasonably have been anticipated.

In Ross v. Louisville & N. R. R., *supra,* we held:

"(T)he rule is that, if the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury." Russell v. Williams, 168 Miss. 181, 193, 150 So. 528, 151 So. 372, 373. But more properly, what we have here, under the allegations of the declaration, is a case of concurrent negligence, as to which each of the concurrent tort feasors is liable. (178 Miss. at 84.)

The rule was reaffirmed in Billups Petroleum Company v. Entrekin, *supra.* Accordingly, in Matthews v. Thompson, *supra,* we held:

" 'If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.' Section 435, Restatement, Law of Torts." (231 Miss. at 282.)

See Sohio Petroleum Co. v. Fowler, 231 Miss. 72, 94 So. 2d 350 (1957); Continental Southern Lines v. Klaas, 217 Miss. 795, 63 So. 2d 211 (1953); Public Serv. Corp. v. Watts, *supra.* See also: Griffith Freight Lines v. Benson, 234 Ala. 613, 176 So. 370 (1937); Bankers & Shippers Insurance Co. v. Blandon, 295 Mich. 324, 294 N. W. 697 (1940); Rodgers v. Blandon, 294 Mich. 699, 294 N. W. 71 (1940); Brown v. Raffety, 234 Mo. App. 620, 136 S. W. 2d 717 (1940); Jinks v. Currie, 324 Pa. 532, 188 A. 356 (1936).

From the foregoing it is clear that the chancellor was manifestly incorrect in holding that the act of Mr. McCorkle in turning left as he did was the sole proximate cause of the collision. In the case at bar there are certainly two different proximate causes of the accident which are blended or fused together. The basic error in the chancellor's legal determination was in holding that the natural and continuous sequence of acts of May did not remain unbroken, but were broken by McCorkle's turn into the left or north lane of travel at the intersection, and thereby the negligence of McCorkle became the sole proximate cause of the injury to Mrs. McCorkle. The chancellor overlooked the fact that McCorkle had the right-of-way, had given a left turn signal, and any motorist, including May, with reasonable judgment and caution, should have realized that a car preceding him, which had signaled a left turn, would probably turn left in the intersection to which both cars were approaching. Since the chancellor found that May should have reasonably anticipated that some injury to another would probably result from his attempt to pass under the circumstances, it must follow that McCorkle's act of turning was not an intervening, independent and efficient cause.

It is inescapable that May's failure to observe McCorkle's left turn signals, or his complete disregard for them, that May's failure to decrease the speed of his car when approaching the intersection but, to the contrary, increased the speed beyond the legal limits, that May's attempt to pass McCorkle's truck within the prohibited distance of 100 feet from the intersection, without any warning signal, after seeing the intersection markings and when he knew, as he so testified, that the crossing which he was approaching was a dangerous intersection, all constitute overwhelming proof of his negligence proximately causing the injuries received by Mrs. McCorkle, who was not guilty of any

negligence, as a guest in her husband's truck, and no negligence can be imputed to her. The appellees are guilty of negligence proximately causing the injuries not only under our statutes, but also at common law.

The appellant is entitled to recover for the injuries inflicted upon her by the appellees. Therefore, the decree is reversed and judgment rendered here for the appellant, and the cause is remanded to the Chancery Court of Attala County for retrial on the question of damages only.

Reversed and judgment entered for appellant and remanded only for determination of damages.

All Justices concur.