492 So.2d 965 (1986)
HOWARD BROTHERS OF PHENIX CITY, INC., and Denise Peters,
v.
E.C. PENLEY.
No. 55640.
Supreme Court of Mississippi.
July 23, 1986.
Thomas C. Gerity, Watkins & Eager, Jackson, R. Eugene Parker, Jr., Varner, Parker & Sessums, Vicksburg, for appellants.
W. Richard Johnson, Prewitt & Johnson, H. Gerald Hosemann, Harper & Hosemann, Vicksburg, for appellee.
En Banc.
HAWKINS, Presiding Justice, for the Court:
Howard Brothers of Phenix City, Inc. (Howard Brothers) and Denise Peters appeal from a judgment of the circuit court of Warren County in favor of E.C. Penley for $100,000 for injuries sustained in the Howard Brothers Store when he was taken hostage by a mentally disturbed customer.
We find there was a jury question on liability, and that no erroneous evidence was admitted. The jury verdict, however, was excessive, and we direct a remittitur of $35,000 or new trial.
Penley has filed a cross-appeal from the circuit judge's refusal to submit any punitive damages instructions to the jury. We find no error here, and affirm the cross-appeal.

*966 FACTS
On June 2, 1981, Howard Brothers, an Alabama corporation, operated a discount department store in Vicksburg. Peters was a salesclerk there. Around 9:30 or 10:00 o'clock that morning Lewis Adams, Jr., approached the handgun showcase and asked Peters to see a certain handgun. She unlocked the case and handed him a.357 caliber Magnum pistol. He told her he wanted to buy it, and asked her if she had bullets for it. She saw they had ammunition in stock and told him, "Yes." He then told her he wanted to buy bullets also.
When she turned to get a purchase form for Adams to fill, he snatched the bullets from the counter, and with the cylinder open loaded the revolver.
Adams told her he wanted to take the gun outside to see if it would shoot. She refused permission, and asked for the gun back.
Peters tried to get the attention of a customer nearby without success, and then got a microphone and asked for change in the sporting goods department. She testified Adams then appeared strange, and she said nothing further to him.
Larry Copeland, a store supervisor, appeared with change just as Adams was going up an aisle. Peters told Copeland to get the gun. Copeland asked for the gun, but Adams refused. She testified that at that moment Penley, a customer, appeared, and Adams fired the gun.
Peters fell to the floor and left through a warehouse in the rear of the store.
Penley, who was 70 years of age at the time of trial, testified he was in the store to purchase freon. He heard the first shot, and was attempting to hide when Adams slipped up beside him, caught him in the back by his clothes and said, "You'll be my hostage." Adams pushed Penley toward the west side of the store yelling, "Get back, get back" to a number of people in the store. Adams fired the pistol when it was close to Penley's head. He kept telling Penley he was going to shoot him. He shoved Penley through the warehouse, and wanted Penley to go to his truck. When they got to the door three law enforcement officers appeared, and Penley testified Adams shot the pistol again. Penley yelled at the officers not to shoot. Adams shoved Penley back inside a vestibule, kicked some soft drink cases over, and turned off the lights. Adams wrapped his legs around Penley and told him he was going to shoot him.
Sheriff Paul Barrett was summoned by the deputies, and after he got there Adams told him he was going to kill Penley. Barrett eventually persuaded Adams to "swap" guns. The officers took the powder and lead out of a small caliber pistol. Adams shoved Penley out the door and threw the Magnum out. Barret threw the small caliber pistol in and the officers went in and subdued Adams.
Adams, a black, was born February 22, 1962. He finished the tenth grade in school. Previous to June 2, 1981, he had been in a mental institution in Louisiana, and had been a patient in the Mississippi State Hospital in Whitfield on two occasions.
He had spent the previous night with a friend drinking, and taking "black mollies" and Valium. He testified on that morning he and his friend awoke around 7:00, and he drank several drinks of whiskey and took about three each of "black mollies" and Valium. His friend drove him to the store. Adams said he was "high."
Peters testified there was nothing unusual about Adams' appearance or conduct until he was refused permission to take the pistol out of the store. The officers testified they detected no smell of alcohol on him following his arrest.
The episode proved unnerving to Penley. He developed a ringing in his ears, and on June 10, 1981, consulted Dr. Chester W. Masterson, an otolaryngologist. Dr. Masterson saw Penley again in September, and in September of 1982 and 1983. He diagnosed Penley's problem as tinnitus, a constant ringing in his ears. He said Penley needed a radio or some type device to produce noise in order to drown out the ringing *967 so as to permit him to rest. He said this condition was permanent, and that there was no cure. He found Penley had a loss of hearing in both ears, but with a 12.5 percent greater loss in his left than right ear. He testified approximately 10 percent of the population would have tinnitus by age seventy in any event.
From Penley's history Dr. Masterson was of the opinion the tinnitus in the left ear came from the gunshot. Penley's total medical expenses were $250.50 to Dr. Masterson, and $50 for medication. Penley also, following this episode, was much more nervous and uneasy. At the time of the shooting Penley had a life expectancy of 11.3 years.
William G. Johnson, Jr., a clinical psychologist at Whitfield, testified he examined Adams and found him to be a chronic schizophrenic paranoid type. Upon Adams previous admission he had also been diagnosed a schizophrenic. Dr. Johnson testified Adams could mask his symptoms, and on several occasions in the hospital he appeared to be covering up his symptoms. He also testified schizophrenia was uncovered by specialists asking the right questions.
On June 2, 1981, Peters had been employed by Howard Brothers about a year, and about six months in the sporting goods department. The only instructions she had received relative to firearms was filling out the form for sale of handguns.
Penley filed suit on May 2, 1982, and trial was had February 2, 1984. The defendants have appealed the jury verdict and judgment in amount of $100,000.

LAW
Penley's suit was based on common law negligence on the part of Peters and Howard Brothers, and violation of the following state and federal statutes:
MCA § 97-37-13 (1972):
It shall not be lawful for any person to sell, give or lend to any minor or person intoxicated, knowing him to be a minor or in a state of intoxication, any deadly weapon, or other weapon the carrying of which concealed is prohibited, or pistol cartridge; and, on conviction thereof, he shall be punished by a fine not less than $25.00 nor more than $200.00, or imprisoned in the county jail not exceeding three months, or both.
18 U.S.C. § 922(b)(1) and (2), (d)(4):
(b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver ...
(1) Any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than 18 years of age, and, if the firearm, or ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than 21 years of age.
(2) Any firearm or ammunition to any person in any state where the purchase or possession by such person of such firearm or ammunition would be in violation of any state law or any published ordinance applicable at the place of sale, delivery or other disposition, unless the licensee knows or has reasonable cause to believe that the purchase or possession would not be in violation of such State law or such published ordinance;
(d) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person ...
(4) Has been adjudicated as a mental defective or has been committed to any mental institution.
The defendants argue there was no negligence, but that even if there were, Adams' bizarre conduct was an independent intervening cause relieving them of liability. While they have cited an impressive array of authority, their main reliance is upon Robinson v. Howard Brothers of Jackson, Inc., 372 So.2d 1074 (Miss. 1979), a case in which the defendant sold a minor a pistol in *968 violation of state law, who later murdered his alleged lover with the weapon. We find Robinson distinguishable.
Two quite common facts of life should have been apparent to Howard Brothers: one, a loaded pistol is dangerous; and two, loaded pistols are especially dangerous in the hands of persons with serious personality disorders, or who are mentally disturbed. Yet this company gave no training, no guidelines, no safety instructions whatever for this young woman (paid at minimum wage) who they assigned as salesclerk in this department.
With little if any greater precaution than if she had been selling a can of salmon, in a single transaction she permitted a mentally deranged person to possess not only a pistol but also the ammunition. Surely such conduct cannot be characterized as free of any negligence.
The defendants' argument that Adams' bizarre conduct was an independent intervening cause is not persuasive. As this Court stated in McCorkle v. United Gas Pipeline Co., 253 Miss. 169, 175 So.2d 480, 489 (1965):
It is a well established rule of law long recognized by this Court, that the original negligence of one party will not be insulated if the occurrence of the intervening cause might reasonably have been anticipated.
See also: Russell v. Williams, 168 Miss. 181, 151 So. 372 [overruling suggestion of error 150 So. 528 (1933)]; Permenter v. Milner Chevrolet Co., 229 Miss. 385, 91 So.2d 243 (1956).
We find that some injury should clearly have been foreseeable by this lax conduct in the sale of handguns. It is no defense the defendants may not have anticipated exactly what transpired. We stated in Nobles v. Unruh, 198 So.2d 245, 247 (Miss. 1967), and Mathews v. Thompson, 231 Miss. 258, 95 So.2d 438 (1957):
We hold that in determining whether the actor's negligence was the proximate cause of the injury, it is not necessary that the actor should have foreseen the particular injury which occurs. It is sufficient if he could have foreseen that some injury would likely result from his negligent conduct.
198 So.2d at 248.
Inattentive, thoughtless conduct in the sale of pistols can cause or set in motion an infinite variety of dangerous situations. We can have little sympathy with such careless dealer's defense that he had no reason to anticipate what occurred in his particular situation.
In this state, in this day and age we are simply not going to assert that there is no common law duty, aside from statute, for a dealer in firearms to have in effect in his place of business some safety precautions and procedures designed to prevent precisely what occurred here. Nor is it our task to prescribe what these procedures and safeguards should be; it is such dealers' task to make sure they are in place and are adequate.
Not only was there a violation of a common law duty, but Peters made no attempt to comply with state and federal statutes. She delivered a pistol to a minor without any attempt to ascertain his age, as well as to a mental cripple with no attempt to ascertain his mental condition. She likewise delivered a pistol to a person who, by his own testimony was high on alcohol and drugs. This condition also escaped her attention.
The jury was entitled to pass upon the question as to whether such common law and statutory negligence was a proximate contributing cause of Penley's injury.
The defendants next contend that it was error to offer evidence that Adams had been in a mental institution because Peters had no reason to know this. This is but a twist of the screw of their "intervening cause" argument, is tenuous, and likewise without merit.
Relevant to the inquiry whether Peters was negligent in her permitting Adams to possess in a single transaction a pistol and ammunition is this question: was he a mental case? The cause of Penley's injury was the careless manner in which Peters permitted *969 Adams, a mentally deranged person, to come into possession of the pistol and ammunition. It was relevant to causation that he was a medically diagnosed paranoid schizophrenic. That the defendants had no safety procedures in place for such an eventuality is likewise relevant. It is no excuse to say that Peters did not know he was a mental case, because she made no attempt to ascertain whether he was or not before enabling Adams to be in a position to harm others.
The defendants' conduct condemns them whichever way their argument goes. If we assume that by a reasonably careful questioning and observation by a mature, experienced dealer in firearms Adams' mental condition would have been suspected, then the defendants are clearly liable. If we say that Adams could have masked his condition so that no layman could ever know anything about his condition, the defendants were likewise negligent. That loaded pistols are especially dangerous and life threatening when possessed by mentally disturbed people is a matter of common knowledge, and firearms dealers should be especially cognizant of this. Any such dealer should have in effect in his business some safeguard to see that a loaded handgun is not placed in the hands of an unknown person, who may very well be a mental case, unless or until his background can be thoroughly investigated.
In the commercial dispensation of handguns care commensurate with the potential danger is required. Or put another way, reasonable care in the retail marketing of pistols requires conduct by the dealer which shows he recognizes the potential danger and acts accordingly.

DAMAGES EXCESSIVE
The defendants' final assignment of error is the excessiveness of the jury verdict.
Penley was 67 years of age, and retired at the time of his experience, with a life expectancy of 11.3 years. He saw an ear specialist three times in two years, was never hospitalized, and had a total medical expense of $300.50. He had a one-eighth additional impairment of hearing in his left ear, and some residual ringing in his ears when the room was quiet. His condition is not rare in persons of his age, in any event, but the doctor felt that because of the gunshot this probably caused his condition. No one claimed his condition was disabling.
His experience in Howard Brothers department store lasting approximately thirty to forty minutes was no doubt terrifying, and he understandably is cautious upon entering stores these days. Beyond this he claims no injury.
The ad damnum clause of the complaint is for $100,000 damages, actual and punitive.
Miss. Code Ann. (1985 Supp.) § 11-1-55 states:
§ 11-1-55. Authority to impose condition of additur or remittitur.
The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the injury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only.[1]
In interpreting whether a verdict should be set aside because it was either grossly inadequate or grossly excessive, this Court has generally done so because it evinced bias, passion or prejudice. We are particularly reluctant on appellate review to set aside a jury's verdict, and will not do so simply because we think it is too high or too low. Indeed, we have said it must be so high as to "evince bias, passion or prejudice," or so as to "shock the enlightened *970 conscience" of this court. For example, see: City of Jackson v. Locklar, 431 So.2d 475, 481 (Miss. 1983); Wood v. Nichols, 416 So.2d 659, 672 (Miss. 1982) Anderson v. Jaeger, 317 So.2d 902, 907 (Miss. 1975).
It is pertinent to note, however, that the statute authorizes a remittitur when the damages award were contrary to the overwhelming weight of the evidence. We recognized this factor as well in Lewis Grocer Co. v. Williamson, 436 So.2d 1378, 1381 (Miss. 1983), and in Walton v. Scott, 365 So.2d 630, 632 (Miss. 1978).
To us the jury verdict in this case appears an expression of outrage at Howard Brothers conduct as much as an endeavor to compensate Penley for his injuries. It clearly is against the overwhelming weight of the evidence. We accordingly will direct a new trial on damages unless the plaintiff accepts a remittitur of $35,000.

CROSS-APPEAL  PUNITIVE DAMAGES
The circuit judge refused Penley's requested instructions on punitive damages. Penley has cross-appealed, contending sufficient evidence was adduced to authorize jury consideration of punitive damages.
Counsel for Penley have cited three cases in support of the cross-appeal: T.C.L., Inc. v. LaCoste, 431 So.2d 918 (Miss. 1983); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454 (Miss. 1983); and Consolidated American Life Insurance Co. v. Toche, 410 So.2d 1303 (Miss. 1982). While each of these cases involving breach of contract announces general principles governing punitive damages, counsel fails to enlighten us how the negligence in this case, which we agree was substantial, can justify punitive damages. Indeed, they do not attempt to do so.
Counsel have established an isolated episode involving negligence, no more. We cannot say the circuit judge erred in refusing the requested punitive damages instructions. We affirm on the cross-appeal.
If the plaintiff within fifteen days accepts a remittitur of $35,000, the judgment will be affirmed for $65,000 plus interest from date of judgment. Otherwise the judgment will be reversed and remanded for a new trial on damages only.
AFFIRMED ON CROSS-APPEAL. AFFIRMED ON DIRECT APPEAL ON CONDITION OF REMITTITUR.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Miss. Code Ann. §§ 11-7-21 and 99-17-47 likewise authorize granting of new trials.