510 So.2d 483 (1987)
Mary Pearl BLACKMON and Samuel Andrew Leon Blackmon, II By and Through his Father and Next Friend, Samuel L. Blackmon and Thomas Jefferson O'Quinn, IV By and Through his Father and Next Friend, Thomas Jefferson O'Quinn, III
v.
Julius PAYNE and Highland Trucking Co., Inc.
No. 56684.
Supreme Court of Mississippi.
May 13, 1987.
Rehearing Denied August 19, 1987.
*484 Walter Brown, Philip E. Carby, Brown, Jenkins & Carby, J. Barret Martin, Natchez, for appellants.
Edwin C. Ward, III, Everette Truly, Adams, Forman, Truly, Ward, Smith & Bramlette, Daniel J. O'Beirne, Natchez, for appellees.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and SULLIVAN, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Adams County, Mississippi, from a judgment rendered in favor of defendants Julius Payne and Highland Trucking Co., Inc. in a suit brought by the plaintiffs for injuries suffered June 15, 1983 when a tractor-trailor driven by Payne collided with an automobile driven by Mary Pearl Blackmon. The two minor children who were passengers in the Blackmon automobile were also injured in the collision.
Separate actions brought by the Blackmons and O'Quinn were consolidated for trial and are consolidated on appeal. Defendant Highland Trucking Co., Inc. (Highland) was granted summary judgment before trial. At the close of trial a jury found in favor of defendant Payne.
Plaintiffs in the trial below appeal to this Court assigning eleven errors, however, on appeal they have consolidated several and only argue eight.
Because we reverse the judgments in favor of both Payne and Highland Trucking Co., Inc., we address only what we find to be the two dispositive issues.

FACTS
On or about June 15, 1983, Jeffrey O'Quinn and Joey O'Quinn were at the home of Mary Pearl Blackmon playing with her son, Samuel Blackmon. The children played at the Blackmon home, which is located on the Stanton Road in Adams County, and two blocks from U.S. Highway 61, until time for the O'Quinn boys to go to the home of their grandmother, Grace Anders. After having put the children in the car, Mrs. Blackmon proceeded down the gravel road from her home to the intersection of Stanton Road and U.S. Highway 61. U.S. 61 is a two-lane highway running north and south. The intersection lies between Natchez to the south and Fayette to the north. Grace Anders' home is on the lefthand side of U.S. 61, heading south from the intersection toward Natchez.
Sammy Blackmon and Jeffrey O'Quinn sat in the back seat as Mrs. Blackmon approached the intersection. There is no dispute that Mrs. Blackmon stopped at the intersection.
The intersection in question lies at a low point between two inclines. Visibility and distance played major roles in development of this accident, as will become evident. But Mrs. Blackmon had to go approximately 487 feet down U.S. 61 to the south to reach the Anders' driveway. She turned left and proceeded south at a rate of 10 to 15 miles per hour. The speed limit for U.S. 61 around the intersection was 45 miles per hour.
Mrs. Blackmon stated that she did not see a truck either as she pulled out onto *485 U.S. 61 or before she attempted to turn from U.S. 61 into the Anders' driveway. As she made the turn she saw the tractor-trailer being driven by Payne in the northbound lane of U.S. 61, but it was too late. Mrs. Blackmon's automobile was struck in the back door and trunk area of the driver's side and the vehicle was bounced off the highway and into a ravine next to the Anders home.
There was proof of a fractured skull suffered by Samuel Blackmon and resulting brain surgery. However, since damages are not at issue on appeal, testimony and other evidence concerning injuries to three of the passengers will not be developed here. Apparently Joey O'Quinn, Jeffrey's brother, was uninjured.
Julius Payne was a truck driver with roughly 13 years experience at the time of the accident. On the day of the accident he was hauling pulpwood on a trailer subleased to him by Highland Trucking Co., Inc. The load weighed 79,000 pounds.
Payne testified that he had taken the northbound lane in order to avoid colliding with the Blackmon vehicle in the rear. As noted, the Stanton Road-U.S. 61 intersection apparently sits at a low point between two small hills. Payne stated he saw the Blackmon vehicle at the intersection as he topped the hill to the right of the intersection.
Like Blackmon, Payne was headed toward Natchez. He stated that as he started down the hill the Blackmon vehicle pulled out onto U.S. 61. The vehicle was not going fast, so about at the intersection Payne crossed from the southbound lane into the northbound lane in order to miss her. Payne stated he thought the Blackmon vehicle would "get on up some out of my way," but instead it turned in front of him and the collision ensued.
Payne was traveling at an estimated speed of 43 miles per hour as he topped the hill heading toward the intersection. This was an estimate since his speedometer was broken.
He said he began braking when the Blackmon vehicle entered the intersection and he estimated that at the point of collision he was traveling about 25 miles per hour. He said he braked continually and slowed continually as he approached the Blackmon vehicle, but never came along beside it before the accident.
Dennis Felder was a witness to the accident. He was behind the tractor-trailer by five or six car lengths. He saw the collision but Felder's testimony is unclear as to whether he actually saw the tractor-trailer change lanes or whether he just saw both vehicles in their respective lanes. However, Felder was not cross-examined by plaintiffs.
A man who was a Mississippi Highway Patrolman on the date of the collision, Ernest Eichelberger, testified that he responded to the accident call that day. He said he interviewed Mrs. Blackmon after the accident. She seemed upset but told him that as she started out into the intersection that all she could see was this big truck coming after her so she decided "to go on and get out of the truck's way" by making the turn into the Anders driveway.
On rebuttal Mrs. Blackmon testified that her statement referred to the second turn off U.S. 61. She did not see the tractor-trailer until she attempted to turn left into the Anders' driveway and it was at that point that she tried to get out of the way of the oncoming truck.
Mrs. Blackmon testified on rebuttal that she signaled to turn before entering U.S. 61 and before turning left off of U.S. 61. Payne stated that he did not see a signal.
B.C. Jordan testified on behalf of Payne as an expert witness in the field of civil engineering. He testified that from the centerline of the Stanton Road-U.S. 61 intersection it was 487 feet to the Anders driveway. Jordan testified that a driver in a vehicle at the intersection could have seen the top of a tractor-trailer about 789.5 feet away. However, the driver of a tractor-trailer could not see the intersection from that distance because the cab would still be below the hill. A driver of a tractor-trailer could see the intersection from the top of the hill, however, a distance of 500 feet.
*486 On appeal the plaintiffs below state that they accept the measurements from the top of the hill to the point of collision as controlling facts.
Jordan could not give an opinion as to the stopping distance of a tractor-trailer carrying a load of 79,000 pounds traveling at 43 miles per hour because there are too many variables including the road condition, the condition of the tires and brakes and how hard the brakes are applied.
The jury viewed pictures taken of the trailer's tires shortly after the accident, depicting the wear and remaining tire tread. Though some are noticeably worn, Payne testified that only one tire looked slick to him.
The jury found for the defendant, apparently determining that Mrs. Blackmon was negligent and this negligence was the sole proximate cause of the accident.

I.
The learned trial judge granted the following instruction:
You are instructed that negligence which merely furnishes the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which injuries are inflicted is not the proximate cause of the injuries. If another, acting independently and voluntarily, puts in motion another and intervening cause which efficiently thence leads in an unbroken sequence to the injury, the latter's negligence is the proximate cause and the original negligence is relegated to the position of a remote and therefore nonactionable cause.
Thus, if you find from a preponderance of the evidence in this case that the defendant, Julius Payne, was negligent but that an independent and voluntary act by Mrs. Mary Pearl Blackmon followed the defendant's acts or omissions, if any, and that the negligence of Mrs. Mary Pearl Blackmon led in an unbroken sequence to the plaintiff's injuries, then the negligence of Mrs. Blackmon is the proximate cause of the plaintiff's injuries and the original negligence, if any, of the defendant, Julius Payne, is a remote and therefore nonactionable cause and if you so find from a preponderance of the evidence then it is your sworn duty to find for the defendant, Julius Payne.
We agree with plaintiffs below that this instruction was not warranted in the form presented and it had a tendency to confuse the jury. We find this requires reversal for a new trial.
Mississippi is a comparative negligence state. Evans v. Journeay, 488 So.2d 797, 799 (Miss. 1986); Bell v. City of Bay St. Louis, 467 So.2d 657 (Miss. 1985). Miss. Code Ann. § 11-7-15 (1972).
Even though a plaintiff might have been negligent, he might still recover from a defendant whose negligence proximately caused or contributed to the plaintiff's injuries. Evans v. Journeay, 488 So.2d at 799.
We have long recognized that there may be more than one proximate cause of an accident. Monroe County Electrical Power Ass'n v. Pace, 461 So.2d 739, 746 (Miss. 1984); Hankins v. Harvey, 248 Miss. 639, 160 So.2d 63 (1964); Mississippi Power & Light Co. v. Walters, 248 Miss. 206, 252, 158 So.2d 2, 20 (1962).
Instruction D-9 correctly states the principle recognized in our law that an independent intervening cause relieves a party of liability for negligence resulting in injuries. The Restatement (Second) of Torts § 440-41 (1962) refers to this as an intervening superseding cause.
However, the instruction as applied to the facts goes too far.
At the time Mrs. Blackmon pulled her automobile out onto U.S. 61, Payne was approximately 500 feet from the intersection. It was near the intersection that Payne veered his tractor-trailer from the southbound lane into the northbound lane, crossing a double-yellow line into the oncoming lane of traffic while heading up a sloping hill and carrying a 79,000 pound load of pulpwood. It was approximately 487 feet past the intersection that Mrs. Blackmon turned across the northbound lane and the collision occurred.
*487 The instruction, as worded, however, would allow the jury to find that Mrs. Blackmon was the independent intervening cause (and therefore the sole proximate cause) of the accident merely because she was involved in the accident no matter how negligent Payne might have been. Thus, by the instruction, the jury could have found Payne was speeding as he approached the intersection, or, conceivably, even negligently attempting to pass Mrs. Blackmon's vehicle, crossing the double-yellow no passing lines and failure to have his heavily loaded truck under control, yet absolve him of liability if it also found that Mrs. Blackmon's negligence was the more proximate in time to the accident. Such is not our law.
To be sure, the determination of proximate cause involves a temporal element. However, the last cause put in motion which in fact contributes to the result is not necessarily the sole proximate cause.
True, this Court has stated:
[T]hat negligence which merely furnished the condition or occasion upon which injuries are received, but does not put in motion the agency by or through which the injuries are inflicted, is not the proximate cause thereof.
Robison v. McDowell, 247 So.2d 686, 688 (Miss. 1971). See also, Hoke v. Holcombe, 186 So.2d 474, 477 (Miss. 1966); Mississippi City Lines, Inc. v. Bullock, 194 Miss. 630, 640, 13 So.2d 34, 36 (1943).
However, if an antecedent negligent act puts in motion an agency which continues in operation until an injury occurs it would appear to be more like a second proximate cause than a remote and unactionable cause.
The facts as presented suggest the former rather than the latter, since it would appear that any negligence on the part of Payne, assumed for purposes of the instruction, would have put in motion an agency, his tractor-trailer, which would have still been operating at the time of the accident. We are familiar with the fact that there is often some degree of negligence on the part of both parties to an automobile collision, and this does not mean that one or either is barred from recovery. It should make little difference in this context which negligent act actually happened last.
In suits arising from such circumstances the jury should not be confused by an instruction which implies that it should excuse a defendant who was negligent merely because he was not the last link in an uninterrupted causal chain.
In addition, neither Instruction D-9 nor the instructions as a whole take into account that "the original negligence of one party will not be insulated if the occurrence of the intervening cause might reasonably have been anticipated." McCorkle v. United Gas Pipeline Co., 253 Miss. 169, 175 So.2d 480, 489 (1965). See also Howard Brothers of Phenix City, Inc. v. Penley, 492 So.2d 965, 968 (Miss. 1986).
"We have repeatedly condemned jury instructions which, if followed by the jury would completely deny a negligent plaintiff recovery, even though the defendant may also be negligent." Bell v. City of Bay St. Louis, 467 So.2d at 664.
We think Instruction D-9 goes too far and dilutes our comparative negligence law. It confuses the jury to suggest that the "last negligent act" establishes proximate cause, especially in an automobile collision case. Adapting what we stated sometime ago in Mississippi City Lines, Inc. v. Bullock, 194 Miss. 630, 640, 13 So.2d 34, 36 (1943), in deciding whether Mrs. Blackmon's negligence is an independent intervening cause "[T]he question is, did the facts constitute a succession of events so linked together as to make a natural whole, or was there some new and independent [and reasonably unanticipated] cause intervening between the alleged wrong and the injury?"
Since the jury in this case was not instructed to consider whether Payne's negligence, if any, was so linked with the negligence of Mrs. Blackmon as to make a "natural whole," or to consider whether Mrs. Blackmon's negligence was to be reasonably anticipated, we reverse.
*488 Plaintiffs below also appealed the denial at trial of a requested instruction which would instruct the jury that if it found that Payne was attempting to pass the Blackmon vehicle, it would have been negligence per se. See Miss. Code Ann. 63-3-611 (1972).
We think on retrial with the same development of facts the trial court should consider granting a similar instruction uncluttered by language suggesting Payne might have acted reasonably under the circumstances, since obviously if Payne were attempting to pass and crossed a double-yellow no passing line going up the hill with a 79,000 pound load a negligence per se instruction would have been appropriate.

II.
Since we reverse for a new trial as against Payne, the plaintiffs' claims against Highland Trucking Co. on a theory of respondeat superior are not moot. As we find error in the trial court's award of summary judgment to Highland Trucking Co. we reverse this judgment with instructions to reinstate Highland as a defendant in this action.
In the procedural setting of this case, Highland was not made a defendant until after Julius Payne was deposed.
On the basis of his answers to questions concerning his working relationship with Highland, the plaintiffs were allowed to amend their complaints to name Highland as a codefendant, alleging that at the time of the collision, Payne was acting in the course and scope of his employment with Highland, and was acting in furtherance of Highland's business.
Plaintiffs deposed Highland president, Samuel Cauthen, and then Highland moved for summary judgment and submitted supporting affidavits by Cauthen and Julius Payne which Highland argued demonstrated that Payne was in fact an independent contractor and not a servant.
Plaintiffs opposed the motion at a hearing by specifically pointing to statements made by Payne in his deposition which appeared to contradict statements in his affidavit.
The trial court found that the facts as found in the affidavits and Payne's deposition did not create a genuine issue of material fact, M.R.C.P. 56, and granted summary judgment. We disagree. The deposition of Payne is in direct conflict with the affidavit.
Generally, one who employs an independent contractor is not liable for his negligence. Mississippi Power Co. v. Brooks, 309 So.2d 863 (Miss. 1975); Ingalls Shipbuilding Corp. v. McDougald, 228 So.2d 365 (Miss. 1969); Federal Compress & Warehouse Co. v. Swilley, 252 Miss. 103, 171 So.2d 333 (1965). There are exceptions but plaintiffs below do not suggest Highland might be liable under any exceptions heretofore recognized. See Swilley, supra (nondelegable duty); Hardy v. Brantley, 471 So.2d 358 (Miss. 1985) (independent contractor providing services for hospital); West End Corp. v. Royals, 450 So.2d 420 (Miss. 1984) (independent contractor who built structure for landowner).
If, however, Payne is an agent instead of an independent contractor, then the law of principal and agent would hold Highland liable for Payne's negligence committed during the course and scope of his employment. See e.g., Odier v. Sumrall, 353 So.2d 1370 (Miss. 1978).
In Powell v. Masonite Corp., 214 So.2d 469 (Miss. 1968), this Court recognized that a master and servant relationship may be shown by circumstantial evidence. This Court noted that "the long continued employment of a person to cut and haul logs under a contract that may be terminated at will `strongly indicate[s] the contract hauler is no longer an independent contractor but has assumed the status of an employee under the relationship of master and servant.'" Id. at 470 (citing Brown v. E.L. Bruce Co., 253 Miss. 1, 10-11, 175 So.2d 151, 156 (1965).
Payne stated in his deposition that he worked exclusively for Highland Trucking Co., that he had a regular job with Highland and that he hauled for no one else but Highland.
In his affidavit Payne refuted these statements and stated that he did indeed haul things other than pulpwood for other *489 companies. Cauthen's affidavit states that his company in no way controls or directs Payne's activities, and both Payne and Cauthen stated in their affidavits that Highland makes no deductions for nor provides any benefits to Payne other than a pay-check.
On appeal, Highland takes the position that Payne's deposition and affidavit are not contradictory concerning Payne's exclusive employment arrangement with Highland because the deposition questioning centered on pulpwood hauling only, not other types of hauling.
While after evaluating the evidence Payne may not seem to be a servant, we think any evaluation of the disputed evidence should be done during a trial rather than disposed of on a motion for summary judgment. The purpose of summary judgment is not to try issues, but only to decide whether there are issues to be tried. New Orleans Great National Railroad Co. v. Hathorn, 503 So.2d 1201 (Miss. 1987); Mississippi Road Supply Co., Inc. v. Zurich-American Co., 501 So.2d 412 (Miss. 1987); Mississippi Moving & Storage Co. v. Western Electric Co., Inc., 498 So.2d 340, 342 (Miss. 1986); Shaw v. Burchfield, 481 So.2d 247, 252 (Miss. 1985); Bush v. Mullen, 478 So.2d 313, 315 (Miss. 1985).
On appeal, Highland suggests that summary judgment was proper because the plaintiffs did not respond to Highland's affidavits filed in support of its motion.
This argument overlooks two points. First, the burden is upon the movant to establish that there exists no material issue of fact, and that he is entitled to judgment as a matter of law. Pargo v. Electric Furnace Co., 498 So.2d 833 (Miss. 1986); Mississippi Moving & Storage v. Western Elec., 498 So.2d at 342; Shaw v. Burchfield, 481 So.2d at 252.
Second, plaintiffs below did in fact respond in compliance with M.R.C.P. 56(c) when they cited the trial court to passages from Payne's deposition which pointed out unresolved issues of fact. In this sense the plaintiffs below brought forward "significant probative evidence demonstrating the existence of the triable issue of fact." Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986); Brown v. Credit Center, Inc., 444 So.2d 358, 363 (Miss. 1983).
Highland's argument that Payne's deposition is not inconsistent with his affidavit is the very type of thing which should be weighed and considered at a trial on the merits. We have recognized that "[Q]uestions of respondeat superior often, as here, present issues of fact resolution of which is assigned to the trier of fact... ." Royal Oil Co. v. Wells, 500 So.2d 439, 446 (Miss. 1986).
We are of the opinion that the depositions and affidavits presented a genuine issue of material fact which should not have been resolved by summary judgment. Therefore, the summary judgment granted in favor of Highland Trucking Co. is reversed.
Finding that the jury was incorrectly instructed concerning intervening causes, we reverse for a new trial. In addition, we hold that summary judgment was improvidently granted in favor of defendant Highland Trucking Co., Inc., thus we also reverse the judgment with instructions to reinstate Highland as a defendant.
REVERSED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.