WALLER, Chief Justice,
for the Court:
¶ 1. Twenty-year-old Xavier Zurndell Moore pleaded guilty to manslaughter for the shooting death of his mother’s live-in boyfriend, Robert Williams. The fatal bullet had been purchased from the Walmart in Indianola, Mississippi. Robert’s daughter and his estate filed a wrongful-death suit against Walmart, alleging that it unlawfully had sold ammunition to the underage Moore and that the sale proximately had caused Robert’s death. The trial court granted summary judgment for Wal-mart based on this Court’s decision in Robinson v. Howard Brothers of Jackson, 372 So.2d 1074 (Miss.1979). In that case, this Court held that, even though the store had violated federal law by selling a firearm and ammunition to a minor, the minor’s subsequent murder of a third party had not been foreseeable; the seller, therefore, was not civilly liable for the death. Id. at 1076. Based on Robinson, we find that Moore’s criminal act was not foreseeable and that Walmart reasonably could assume that Moore would follow the law. Therefore, we affirm summary judgment in favor of Walmart.
FACTS
¶ 2. On January 19, 2006, twenty-year-old Xavier Zurndell Moore and his coworker, Ladarius White (a.k.a. Smurf), entered Walmart in Indianola, Mississippi, to pur *114 chase clothes and other items. While there, Moore remembered that he needed more bullets for a handgun that he had purchased recently. So Moore entered the sporting goods department and approached Martha Parker, who was working behind the sales counter that day. Moore asked Martha if she had any bullets for a .45-caliber Smith and Wesson handgun. What happened next is disputed.
¶ 3. Martha asserted that her coworker, Terrence Parker, asked Moore if he wanted the Remington or Winchester brand. She said that Moore said nothing and simply walked away. Moments later, White approached the sales counter and asked Martha if she had any bullets for a .45-caliber handgun. Martha said that she then asked for and received White’s driver’s license. The license showed that White was more than twenty-one years old; thus, Martha entered White’s date of birth into the computer, returned his driver’s license to him, and sold him the bullets. Martha acknowledged that she had discerned that Moore and White were together. Further, she noticed that Moore had provided White the money for the transaction.
¶4. Moore’s recollection was different. He affirmed that he first asked Martha whether she had any bullets for a .45-caliber Smith and Wesson. He then asked her how much the bullets cost, and she told him the price. Moore said that he informed Martha that he wanted to purchase the bullets, and she began to process the sale. He specifically recalled Martha asking to see his driver’s license; he responded by telling her that he did not have it with him. Moore then asked Martha if White, who was browsing in a nearby aisle, could purchase the bullets for him. Martha told Moore that White could do so if White had his identification. Moore then handed White some money, and Martha completed the sale to White. After the purchase, White handed Moore the change and the bullets, and the two of them walked away.
¶ 5. The next evening, Moore and his then-girlfriend, Barbara Williams, attended a high school basketball game. After the game, they stopped to eat, watched television, and drank a little more than half of a fifth of vodka.[1] They then spent the night at the Bayou Apartment complex where Moore lived with his sister, his mother, and his mother’s live-in boyfriend, Robert Williams.[2] In the early morning hours, Moore and Barbara were awakened when Robert began knocking on Moore’s bedroom door. Robert demanded that Moore return a box fan he had borrowed. Moore and Barbara slowly got dressed; meanwhile, Robert grew increasingly impatient and began pounding harder on the door. A heated exchange ensued between Robert and Moore. According to Moore, Robert threatened that “when I opened the door he had something for my little a* * .... ” Moore stated that he feared Robert was going to be physically violent.[3] *115 Moore then got his preloaded handgun from the closet[4] and fired a single shot at the door. Moore maintained that he had aimed about seven or eight feet high and that he had intended only to scare Robert away. “I tried to fire up at an angle but never pointing the gun at anything[,] and then being under the influence of alcohol[,] I guess my vision was a little off. I shot a little bit lower than I thought ...,” Moore recounted. When Moore and Barbara opened the door, they found Robert lying on the ground with a gunshot wound to the head. Moore and Barbara transported Robert to a local hospital, where he died the next day.
¶ 6. Martha learned about the shooting death of Robert on January 22, 2006. That same day, Walmart terminated her employment because she had “allowed [a] straw purchase of ammunition.” A “straw purchase,” according to Walmart’s Firearms Training Workbook, “occurs when a[c]ustomer tries to purchase a firearm for someone else (a.k.a. the straw person) and knowingly makes a false statement on the ATF 4473 Form indicating that they are the actual purchaser.”
¶ 7. Moore was indicted for murder but pleaded guilty to manslaughter.
¶ 8. On January 20, 2009, Robert’s daughter, Nydreeka Williams, by and through her natural mother, Theresa Raymond, and Raymond, on behalf of Robert’s estate (collectively “Plaintiffs”) filed suit against eight Walmart entities, MRW Indi-anola Joint Venture, Martha Parker, and John Does 1-6. All defendants except Wal-Mart Stores East, L.P., and Martha Parker (collectively “Walmart”) were dismissed later without prejudice. Plaintiffs asserted that Walmart had violated Section 97-87-13 of the Mississippi Code[5] and Title 18, Section 922 of the United States Code by selling ammunition to a minor. Plaintiffs further alleged that Walmart had been negligent in its training and supervision of Martha.
¶ 9. Months later, Walmart filed a motion to dismiss or, in the alternative, a motion for summary judgment. It asserted that “even if the bullets in question had been sold to Xavier Moore, which [Wal-mart] den[ies], still, the sale to Xavier Moore was not a proximate cause” of Robert’s death. Walmart relied on Robinson as support.
¶ 10. The trial court treated Walmart’s motion as one for summary judgment and entered summary judgment in its favor. The trial court relied upon Robinson and found that Moore’s subsequent criminal act was not “within the realm of reasonable foreseeability.” Following the trial court’s denial of the Plaintiffs’ motion to alter or amend the judgment, the Plaintiffs filed notice of appeal.
¶ 11. On appeal, Plaintiffs argue that summary judgment was improper and that a jury must decide whether Walmart’s unlawful sale was a proximate cause of Robert’s death.
*116 DISCUSSION
Whether the trial court erred in granting summary judgment for Wal-mart.
¶ 12. This Court reviews a trial court’s grant of summary judgment de novo. E.g. Nygaard v. Getty Oil Co., 918 So.2d 1237, 1240 (Miss.2005) (citing Leffler v. Sharp, 891 So.2d 152, 156 (Miss.2004)). Summary judgment is proper when “the pleadings, depositions, answers to interrogatories and admissions on file ... show that there is no genuine issue as to any material fact....” Miss. R. Civ. P. 56(c). Further, we must view the evidence “in the light most favorable to the party against whom the motion has been made.” Nygaard, 918 So.2d at 1240 (quoting Leffler, 891 So.2d at 156).
¶ 13. In 1968, Congress passed the Gun Control Act. Pub.L. No. 90-618, 82 Stat. 1213 (codified as amended at 18 U.S.C. § 921 et seq.). The principal aim of this legislation “was to [curb] crime by keeping ‘firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.’ ” Huddleston v. United States, 415 U.S. 814, 824, 94 S.Ct. 1262, 1268-69, 39 L.Ed.2d 782 (1974) (quoting S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968)). Title 18 U.S.C. § 922(b)(1) of the Act prohibits a licensed firearms dealer from selling handgun ammunition to any person who the dealer knows, or has reasonable cause to believe, is less than twenty-one years old. 18 U.S.C. § 922(b)(1) (2006). The statute provides, in pertinent part, that:
It shall be unlawful for any ... licensed dealer ... to sell or deliver ... any firearm or ammunition to any individual who the licensee knows or has reasonable cause to believe is less than eighteen years of age, and, if the firearm, or
ammunition is other than a shotgun or rifle, or ammunition for a shotgun or rifle, to any individual who the licensee knows or has reasonable cause to believe is less than twenty-one years of age....
18 U.S.C. § 922(b)(1) (2006).
¶ 14. Because we are obligated to view the evidence in the light most favorable to the Plaintiffs, we must accept as true that Moore was the actual purchaser here and that the sale violated 18 U.S.C. § 922(b)(1).
¶ 15. A violation of 18 U.S.C. § 922(b)(1) constitutes negligence per se. See Robinson, 372 So.2d at 1074, 1076. Yet:
[t]he negligence per se doctrine does not create a new cause of action. Rather, it is a form of ordinary negligence, that enables the courts to use a penal statute to define a reasonably prudent person’s standard of care. Negligence per se arises when a legislative body pronounces in a penal statute what the conduct of a reasonable person must be, whether or not the common law would require similar conduct.
[[Image here]]
The effect of declaring conduct negligent per se is to render the conduct negligent as a matter of law. Thus, a person whose conduct is negligent per se cannot escape liability by attempting to prove that he or she acted reasonably under the circumstances. However, a finding of negligence per se is not equivalent to a finding of liability per se. Plaintiffs in negligence per se cases must still establish causation in fact, legal cause, and damages.
Rains v. Bend of the River, 124 S.W.3d 580, 589-90 (Tenn.App.2003) (internal citations omitted) (emphasis added); see also Simpson, 880 So.2d at 1053 (citing Palmer, 656 So.2d at 796) (stating that a plaintiff *117 still must establish that the statutory violation was a proximate cause of the injury); Gulledge v. Shaw, 880 So.2d 288, 293 (Miss.2004) (citing Jackson v. Swinney, 244 Miss. 117, 123, 140 So.2d 555, 557 (1962)) (“To recover, a plaintiff must prove causation in fact and proximate cause.”).
¶ 16. Courts are split on whether the sale of a handgun to a minor may be a proximate cause of any resulting injuries to third parties. In re Antrobus, 519 F.3d 1123, 1125 (10th Cir.2008). Mississippi’s position is set forth in Robinson. Robinson, 372 So.2d 1074.
¶ 17. In Robinson, Howard Brothers of Jackson, Inc., unlawfully sold a pistol and 100 rounds of ammunition to a minor. Robinson, 372 So.2d at 1074. The minor then used the pistol and ammunition that he had purchased from Howard Brothers to murder his lover. Id. The decedent’s husband and others filed a wrongful-death suit against Howard Brothers and the sales clerk who had conducted the sale. Id. As here, they sought to hold the defendants hable under 18 U.S.C. § 922(b)(1). Id. Defendants admitted negligence, but they denied liability for the woman’s death. Id. at 1074-75. This Court affirmed the trial court’s grant of a directed verdict for the defendants. Id. at 1074, 1076. In rejecting the plaintiffs “unrestricted view” that “the murder ... is an example of acts sought to be prevented by the statutes[,]” such that “the sale of the pistol was a contributing cause to the death ... and liability was established as a matter of law[,]” the Court emphasized the general rule that an “ ‘actor may reasonably proceed upon the assumption that others will obey the criminal law.’ ” Id. at 1075-76 (quoting William L. Prosser, Law of Torts 173-74 (4th ed.1971)). The Court reasoned that the minor’s criminal act had been “an independent intervening cause that broke the causal connection between” the unlawful sale and the woman’s death. Id. at 1076. The minor’s criminal act, the Court explained, had not been “within the realm of reasonable foreseeability” because the defendants “could reasonably assume that [the minor] would obey the criminal law.” Id.
¶ 18. Plaintiffs insist that Mississippi law has evolved since Robinson. They argue that this Court repeatedly has held (1) that a criminal act is not a superceding, intervening cause if the act was foreseeable and (2) that foreseeability is a jury question. Plaintiffs offer as support Howard Brothers of Phenix City, Inc. v. Penley, 492 So.2d 965 (Miss.1986), Simpson, and several premises-liability cases, Glover ex rel. Glover v. Jackson State University, 968 So.2d 1267 (Miss.2007) (reversing summary judgment for university and remanding for a jury trial as to whether university was liable for the rape of a fourteen-year-old girl that had occurred on its campus), Kelly v. Retzer & Retzer, Inc., 417 So.2d 556 (Miss.1982) (affirming a directed verdict for a fast-food restaurant owner where plaintiffs had claimed that the restaurant was negligent for failing to provide adequate security and a safe premises for its patrons), Minor Child ex rel. John Doe v. Mississippi State Federation of Colored Women’s Club Housing for the Elderly in Clinton, Inc., 941 So.2d 820 (Miss.Ct.App.2006) (reversing summary judgment in favor of an apartment complex and remanding for a jury to decide whether the apartment complex was liable for the rape of a minor that had occurred on its premises), Davis v. Christian Brothers Homes of Jackson, Mississippi, Inc., 957 So.2d 390 (Miss.Ct.App.2007) (affirming summary judgment for an apartment complex in a wrongful-death suit brought against it under a theory of premise liability).
¶ 19. Foreseeability is key in determining whether a criminal act is a su- *118 perceding, intervening cause. This Court repeatedly has stated that “[generally, ‘criminal acts can be intervening causes which break the causal connection with the defendant’s negligent act, if the criminal act is not within the realm of reasonable foreseeability.’ ” Double Quick, Inc. v. Moore, 73 So.Sd 1162, 1166-67 (Miss.2011) (quoting O’Cain v. Harvey Freeman & Sons, Inc., 608 So.2d 824, 830 (Miss.1991)); see also Double Quick, Inc. v. Lymas, 50 So.3d 292, 298 (Miss.2010); Permenter v. Milner Chevrolet Co., 229 Miss. 385, 91 So.2d 243, 245 (1956) (quoting Anderson v. Theisen, 231 Minn. 369, 372, 43 N.W.2d 272, 274 (1950)) (“As a general rule, a wilful, malicious, or criminal act breaks the chain of causation.”). Moore cited Robinson as support for this proposition. Double Quick, Inc., 73 So.3d at 1166-67 (citing, e.g., Robinson, 372 So.2d at 1076).
¶ 20. Robinson did not hold that criminal acts are always a superseding intervening cause; the Court, rather, held that the minor’s criminal act in that case had not been foreseeable based on the particular circumstances surrounding the minor’s purchase of the gun and ammunition. Robinson, 372 So.2d at 1076.
¶ 21. The Court in Robinson focused on the question of foreseeability in light of the specific facts before it. Id. at 1076. First, it noted that the murder had been premeditated. Id. The Court explained that “there is less reason to anticipate premeditated and malicious acts as opposed to acts which are merely negligent.” /¿.(citing William L. Prosser, Law of Torts 173, 174 (4th ed.1971)). Second, the Court emphasized that the murder had not been within the “ ‘circle of reasonable foreseeability.’ ”[6] Robinson, 372 So.2d at 1076. The sales clerk there had known the minor purchaser; yet there was no evidence that the minor had a prior criminal record or had a propensity to handle firearms in dangerous manner. Id. The Court distinguished Robinson’s facts from those in Franco v. Bunyard, 261 Ark. 144, 547 S.W.2d 91 (Ark.1977). Id. In Franco, the Supreme Court of Arkansas held that a gun dealer’s negligent sale of a firearm could have proximately caused the wrongful death of two individuals. Franco, 547 S.W.2d at 93. The purchaser in that case had been an escaped convict who had a criminal record. Robinson, 372 So.2d at 1076. The minor in Robinson, on the other hand, had no criminal record and no known propensity for violence. Id.
¶22. In sum, the Court in Robinson found that the minor’s criminal act had not been within the realm of reasonable foreseeability because: (1) the minor’s criminal act was intentional and malicious, and (2) *119 the minor had no criminal record nor any known propensity to handle a firearm dangerously or to act violently. Id. The Court applied this same rationale seven years later in Penley to reach the opposite result. See Penley, 492 So.2d at 967-68.
¶ 28. In Penley, a minor entered Howard Brothers and asked to purchase a certain pistol and ammunition. Id. at 966. The sales clerk handed him the gun and placed the ammunition on the sales counter. Id. When the sales clerk turned around, the minor snatched the ammunition from the counter and loaded the gun. Id. The minor eventually grabbed a customer, Penley, and held him hostage until police were able to subdue the minor. Id. The minor, it turned out, suffered from schizophrenia and, at the time he had entered the store, was high from drinking whiskey and taking drugs. Id. Penley sued Howard Brothers for the injuries he had sustained as a result of the incident. Id. at 967. This Court held that the trial court properly had allowed the jury to decide whether Howard Brothers’ negligence was a proximate cause of Penley’s injury. Id. at 968. The Court distinguished Robinson, explaining that injury had been foreseeable in Penley due to the minor’s severely impaired state at the time of the purchase, combined with the lax, inattentive conduct of Howard Brothers. See id.
¶24. Though Penley reached a different result, it did not depart from Robinson’s mode of reasoning. The minor’s criminal acts in Penley simply fell within the circle of reasonable foreseeability based upon the unique facts of that case.
¶25. Plaintiffs maintain that foreseeability is a question that must be decided by a jury. They point to Simpson, which stated that ‘“the question of superceding intervening cause is so inextricably tied to causation, it is difficult to imagine a circumstance where such an issue would not be one for the trier of fact.’ ” Simpson, 880 So.2d at 1053 (quoting O’Cain v. Harvey Freeman & Sons, Inc., 603 So.2d 824, 830 (Miss.1991)). This statement is sound; yet Robinson and the cases it relied upon — Bufkin v. Louisville & N.R. Co., 161 Miss. 594, 137 So. 517 (1931), and Permenter — exemplify such difficult-to-imagine circumstances. Each involved an instance of this Court finding that the issue of independent, intervening cause would not be a question for the jury, despite the defendant’s undisputed statutory violation. See Robinson, 372 So.2d at 1074; Permenter, 91 So.2d at 252; Buflcin, 137 So. at 517.
¶ 26. In cases like the one before us, a minor’s criminal, intentional, malicious act — an act beyond mere negligence — breaks the causal connection unless the license dealer knew or had reason to know that the minor had a propensity to commit such an act. Robinson, 372 So.2d at 1076; Penley, 492 So.2d at 968. More than a negligent sale is required.
¶ 27. Plaintiffs further argue that the “risk of harm” that the Gun Control Act was intended to prevent was exactly the type of conduct that occurred in this case. They rely heavily on K-Mart Enterprises of Florida, Inc. v. Keller, 439 So.2d 283 (Fla.Dist.Ct.App.1983) for support. In Keller, K-Mart unlawfully sold a gun to a man who was under indictment for a felony and was an admitted drug user. Keller, 439 So.2d at 284-85. The purchaser then lent the gun to his brother, an ex-heroin addict who was taking pills and was drunk at the time. Id. at 285. Following a confrontation with his estranged wife, the brother took two relatives hostage. Id. During an ensuing standoff with police, the brother fired a shot that struck a police officer, Keller, in the head. Id. Keller filed a personal-injury suit against *120 K-Mart, and a jury returned a verdict in Keller’s favor. Id. at 284. The Third District Court of Appeal for the State of Florida affirmed. Id. at 288. It stated that “the jury could properly have found the shooting of Keller was the type of harm, or ‘within the risk’ designed to be prevented by the Gun Control Act — the misuse of a firearm by an irresponsible purchaser — so that K-Mart’s non-adherence to that statute constituted a legal cause of the plaintiffs injuries.” Id. at 286.
¶ 28. We find Keller unpersuasive: Keller itself noted that Mississippi law is different. The court in Keller stated that several courts have held that “criminal misuse of a firearm does not insulate the seller from liability arising out of a violation ... of the Gun Control Act.” Id. at 287 (citations omitted). It cited Robinson as contrary authority for this statement. Id. at 287 (contra Robinson, 872 So.2d 1074). As discussed above, Robinson is more nuanced than Keller suggests; nevertheless, the Florida appellate court recognized the distinction in Mississippi law on this issue. Id. Mississippi, furthermore, is not alone; other states follow our same approach. Fly v. Cannon, 836 S.W.2d 570 (Tenn.Ct.App.1992); Chapman v. Oshman’s Sporting Goods, Inc., 792 S.W.2d 785, 787-88 (Tex.App.1990); see also Scoggins v. Wal-Mart Stores, Inc., 560 N.W.2d 564 (Iowa 1997) (discussing Robinson in holding that dealer’s negligent sale was not a proximate cause of a minor’s suicide).
¶ 29. We find that summary judgment was proper in this case. Moore’s shooting of Robert was a criminal act, beyond mere negligence. Further, nothing in the record suggests that, at the time of purchase, Walmart had any reason to believe that Moore would commit a criminal act. The record does not show that Moore had a criminal record or that he had exhibited a propensity for violence prior to the purchase of the ammunition.
¶ 30. In addition to Moore’s reckless shooting of Robert and the lack of propensity evidence, there was little or no reason for Walmart even to have known that Moore was under twenty-one years of age. Construing the facts in the light most favorable to the plaintiffs, Moore simply said that he did not have his license with him; he never represented that he was or was not of legal age. Regardless, Moore was twenty years old — old enough to appreciate the danger of misusing ammunition. Cowart v. Kmart Corp., 20 S.W.3d 779, 784 (Tex.App.2000) (noting that “[a] minor’s ability to appreciate the danger of ammunition depends on the age of the minor”) (citing Schmit v. Guidry, 204 So.2d 646, 648 (La.Ct.App.1967)). Though Moore said that he was not an expert in using a gun, he admitted that he had known that guns could kill people.
¶ 31. Considering the totality of the circumstances, Walmart reasonably could assume that Moore would obey the law. See Robinson, 372 So.2d at 1076.
CONCLUSION
¶ 32. We find that Moore’s criminal act was not within the realm or circle of reasonable foreseeability at the time that the ammunition was purchased. Walmart’s sale of the ammunition, therefore, could not have been a proximate cause of Robert’s death. Accordingly, we affirm the trial court’s grant of summary judgment for Walmart.
¶ 33. AFFIRMED.
CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. RANDOLPH, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY *121 WALLER, C.J., CARLSON, P.J., LAMAR AND PIERCE, JJ. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, CHANDLER AND KING, JJ. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., CHANDLER AND KING, JJ.

. Notably, Moore’s deposition testimony provided that earlier in the day he had purchased "green apple vodka from a liquor store ... where I cash my check at.” Moore noted that identification was not requested by the liquor store cashier, despite the fact that Moore was under twenty-one years old.

. Barbara Williams and Robert Williams are not related.

.Moore's sworn testimony provided that Robert previously had been physically abusive to Moore's mother and sister. Additionally, Moore and Robert had an extensive history of confrontations, which involved the police being contacted and Robert being taken into custody on at least one prior occasion.

. Moore later acknowledged this action was affected by his intoxication, as "being under the influence of alcohol ... your mind can tell you one thing[,]” and maybe if I wasn’t under the influence I wouldn't have [taken]" Robert's actions and statements in the same manner.

. Section 97-37-13 is inapplicable here. That statute prohibits any person from selling a "pistol cartridge” to anyone who is intoxicated or under the age of eighteen. Miss. Code Ann. § 97-37-13 (Rev.2003). There is no dispute that Moore was twenty years old at the time of the purchase, and nothing in the record suggests that Moore or White was intoxicated when the sale occurred.

. The "circle of reasonable foreseeability” has been described as follows:
The settled law in this state may be summarized in the form of a diagram, as follows: The area within which liability is imposed is that which is within the circle of reasonable foreseeability using the original point at which the negligent act was committed or became operative, and thence looking in every direction as the semidiameters of the circle, and those injuries which from this point could or should have been reasonably foreseen as something likely to happen, are within the field of liability, while those which, although foreseeable, were foreseeable only as remote possibilities, those only
slightly probable, are beyond and not within the circle, — in all of which time, place and circumstance play their respective and important parts.
Mauney v. Gulf Ref. Co., 193 Miss. 421, 9 So.2d 780, 781 (1942); see also Gulledge, 880 So.2d at 293 (quoting III. Cent. R. Co. v. Bloodworth, 166 Miss. 602, 145 So. 333, 336 (1933)). Moreover, the foreseeability inquiry is not governed by hindsight, "weighed on jewelers’ scales, nor calculated by the expert mind of the philosopher,” but instead focuses on “what is likely to happen, — from cause to probable effect.” Mauney, 9 So.2d at 781 (quoting Bloodworth, 145 So. at 336).